UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT A. MACKAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2363 JR |
| | ) |
| DRUG ENFORCEMENT | ) |
| ADMINISTRATION, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the nineteen defendants in this action move for summary judgment. As grounds for this motion, defendants assert that there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law. A memorandum of points and authorities, a statement of material facts as to which there is no genuine issue, and a proposed order granting the relief sought are attached hereto. The exhibits to the memorandum of points and authorities are being submitted in paper copy due to their volume.

Plaintiff should take notice that any factual assertions contained in the declarations and other attachments in support of defendants' motion will be accepted by the Court as true unless plaintiff submits his own declarations or other documentary evidence contradicting the assertions in the defendants' attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which

provides as follows:

> Supporting and opposing affidavits shall be
> made on personal knowledge, shall set forth
> such facts as would be admissible in
> evidence, and shall show affirmatively that
> the affiant is competent to testify to the
> matters stated therein.  Sworn or certified
> copies of all papers or parts thereof
> referred to in an affidavit shall be attached
> thereto or served therewith.  The court may
> permit affidavits to be supplemented or
> opposed by depositions, answers to
> interrogatories, or further affidavits.  When
> a motion for summary judgment is made and
> supported as provided in this rule, an
> adverse party may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

                    Respectfully submitted,

                    KENNETH L. WAINSTEIN, D.C. Bar #451058
                    United States Attorney

                    RUDOLPH CONTRERAS, D.C. Bar #434122
                    Assistant United States Attorney
                         /s/
                    FRED E. HAYNES, DC Bar #165654
                    Assistant United States Attorney
                    555 4th Street, N.W.
                    Washington, D.C. 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT A. MACKAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2363 JR |
| | ) |
| DRUG ENFORCEMENT | ) |
| ADMINISTRATION, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Defendants, through their undersigned counsel, respectfully submit, in accordance with LCvR 56.1, the following statement of material facts as to which there is no genuine issue to be tried.

Drug Enforcement Administration ("DEA")

1.  By a letter dated April 7, 2005, plaintiff requested from DEA "all records" that in any way related to him.  He further explained that "[t]here are Criminal Investigatory, Forfeiture and other records in Texas, Oklahoma, Arizona and Connecticut."  Exhibit 1 to the Complaint.

2.  At the time of the filing of the Complaint, DEA had no record of having received this Freedom of Information Act ("FOIA") request; however, a copy of the request was telecopied to DEA from the United States Attorney's Office.  Exhibit 1 (declaration of William C. Little, Jr.) to defendants' memorandum in support of their motion for summary judgment, at ¶ 13 (hereafter, the exhibits to defendants' memorandum in support of

their summary judgment motion will simply be referred by exhibit number).

3. Since criminal investigative information is maintained by DEA in the Investigative Reporting and Filing System, a query of this system was conducted. Exhibit 1 at ¶ 16.

4. The search of the Investigative Reporting and Filing System found 17 investigative case files. Exhibit 1 at ¶ 18.

5. With regard to DEA asset forfeiture records, DEA was unable, based on the information provided by plaintiff, to identify any such records. Exhibit 1 at ¶ 17.

6. By a letter dated March 22, 2006, DEA advised plaintiff that the estimated fee for the search and processing of his request was $1,848.00. Exhibit 1 at ¶ 14.

7. Plaintiff was advised by DEA that, since he had no history of paying FOIA fees, he would have to make an advance payment before DEA would process his FOIA request, Exhibit 1 at ¶ 20 and Exhibit B to Exhibit 1, but no advance payment has been made, id.

<u>Federal Bureau of Investigation ("FBI")</u>

8. By letters dated April 7 and April 14, 2005, plaintiff requested from FBI Headquarters and various field offices "all records" that in any way related to him. Exhibits 4 through 11 to the Complaint.

9.   The FBI numbered as Freedom of Information Act/Privacy Act ("FOIPA") Request Number 1024699 the FOIPA request made by plaintiff to the United States Marshals Service ("USMS") for records concerning himself.  In its response to his FOIPA request, USMS located one FBI document in its records and forwarded this document to FBI Headquarters for review and direct response to plaintiff.  FBI Headquarters processed and released this FBI document to plaintiff on September 29, 2005.  The FBI did not delete any information in this document pursuant to the provisions of the FOIPA; however, USMS withheld the name of a USMS employee in this document pursuant to Exemption (b)(7)(C) of the FOIA.  Exhibit 2 (second declaration of David M. Hardy) at ¶ 4.

10.   The FBI numbered as FOIPA Request Number 1026007 the FOIPA request made by plaintiff to the FBI Field Office in Dallas, Texas.  The indices to the Central Records System at the Dallas Field Office were searched for any main files concerning plaintiff with negative results.  Plaintiff was advised by letter from FBI Headquarters dated August 25, 2005, of the negative results of this search for records in the Dallas Field Office. Exhibit 2 at ¶ 5.

11.   However, pursuant to this litigation, another search of the indices to the Central Records System at the Dallas Field Office was conducted and one cross-reference pertaining to

3

plaintiff was located.  This cross-reference is a card form
generated by the DEA that contains the name and date of birth of
plaintiff and that identifies him as a DEA Class I Narcotics
Violator ("DEA Card").  This DEA Card was referred to DEA by
letter dated April 19, 2006, for direct response to plaintiff.
Exhibit 2 at ¶ 5.

12.  The FBI numbered as FOIPA Request Number 1020903 the
FOIPA request made by plaintiff to FBI Headquarters and the FBI
Field Offices in Charlotte, North Carolina; Houston, Texas;
Little Rock, Arkansas; New Haven, Connecticut; Oklahoma City,
Oklahoma; Philadelphia, Pennsylvania; and Phoenix, Arizona.

13.  Plaintiff's FOIPA Request Number 1020903 seeks access
to all records pertaining to himself located at FBI Headquarters
and the seven FBI Field Offices.  Searches of the indices to the
Central Record Systems at FBI Headquarters and these seven FBI
Field Offices located both main files and cross-references
concerning plaintiff.  These records concerning plaintiff were
processed pursuant to the provisions of the FOIPA and all
releasable information in these records was forwarded to
plaintiff by letter dated April 19, 2006.  Exhibit 2 at ¶ 6.

14.  The April 19, 2006, letter advised plaintiff that the
documents were being released to him with certain information
being exempt from disclosure pursuant to Privacy Act Exemption
(j)(2) and FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D) and

(b)(7)(F).  Plaintiff was also advised that the records responsive to his request consisted of both main files in which he is listed as the subject of the investigation and cross-references to him in files on other subjects.  Exhibit 2 at ¶ 36.

15.  Pursuant to this litigation, the records concerning plaintiff were reprocessed to achieve maximum disclosure of information.  Some of the information that was withheld from disclosure in the FOIPA release to plaintiff by letter dated April 19, 2006, is now being released to him in Exhibit AA of this declaration.  In addition, the use of FOIA Exemption (b)(7)(F) to withhold certain information in these records has been withdrawn.  Exhibit 2 at ¶ 36.

16.  In its effort to locate documents responsive to plaintiff's FOIPA requests, the FBI searched two databases, the automated data base and the inactive indices of the Central Records systems.  Exhibit 2 at ¶ 42.

17.  Attached to Exhibit 2, as Exhibit AA, are copies of the pages now being released to plaintiff, which are numbered MACKAY-1 through MACKAY 347.  No documents were withheld in full; however, documents identical to other documents being released and documents that were referred to the DEA have been replaced by "deleted page information sheets."  The FBI has released to plaintiff 43 pages in their entirety and 151 pages with redactions.  There were 126 duplicative pages and 27 pages were

referred to DEA for direct response to plaintiff.  Exhibit 2 at ¶¶ 57 and 129.

18.  A coded format has been used to assist the Court and plaintiff in reviewing the information withheld within the context of the documents themselves.  Exhibit 2 at ¶ 58.

19.  The coded format identifies on each document withheld in part the FOIA exemptions being asserted by the FBI as to the redacted information that is protected from disclosure under the FOIA.  See Exhibit 2 at ¶ 58.

20.  As reflected in the coded format on the released but redacted documents, the FBI properly asserted Exemption (b)(2), 5 U.S.C. § 552(b)(2)(internal agency rules and practices), to protect from disclosure confidential source symbol numbers, confidential source file numbers, and internal FBI facsimile numbers.  Exhibit 2 at ¶¶ 61-69.

21.  The FBI properly asserted Exemption (b)(6), 5 U.S.C. § 552(b)(6)(clearly unwarranted invasion of personal privacy), to protect from disclosure names of FBI agents and support personnel, names and identifying information of non-FBI personnel of other United States government agencies, names of local law enforcement personnel, names and identifying information of individuals who provided information to, and cooperated with, the FBI, names and identifying information of individuals who were of investigative interest to the FBI, and names and identifying

information of individuals who are merely mentioned in FBI investigative records.  Exhibit 2 at ¶¶ 70 to 86.

22.  In asserting Exemption (b)(6), the FBI correctly concluded that there was no legitimate public interest in the release of the information redacted under Exemption (b)(6) that had to be balanced against the privacy interests of the individuals.  Exhibit 2 at ¶ 87.

23.  The FBI has properly asserted FOIA Exemption (b)(7), 5 U.S.C. § 552(b)(7), to protect from disclosure information in records compiled for law enforcement purposes.  Exhibit 2 at ¶¶ 89 and 90.

24.  Under Exemption (b)(7)(C)(unwarranted invasion of personal privacy), the FBI has properly redacted the names of FBI special agents and support personnel, the names and identifying information of non-FBI personnel of other United States government agencies, names of local law enforcement personnel, the names and identifying information of individuals who provided information and cooperated with the FBI, the names and identi-fying information of individuals who were of investigative interest to the FBI, and the names and identifying information of individuals who are merely mentioned in FBI investigative records.  Exhibit 2 at ¶¶ 91 to 106.

25.  The FBI could not identify any legitimate public interest in the release of the information withheld under Exemption (b)(7)(C).  Exhibit 2 at ¶ 107.

26.  Under Exemption (b)(7)(D), the FBI has properly redacted information that could identify individuals who provide information to the FBI on a confidential basis, i.e., confidential sources.  Exhibit 2 at ¶¶ 108 to 114.

27.  Included in the material withheld under Exemption (b)(7)(D) is material that would identify a confidential source as to whom express assurances of confidentiality or as to whom there was an implied assurance of confidentiality, confidential source symbol numbers, and confidential source file numbers.  Exhibit 2 at ¶¶ 108 to 125.

28.  The FBI has processed and released all segregable information from the records subject to plaintiff's FOIA requests.  Exhibit 2 at ¶ 129.

Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")

29.  By a letter dated April 7, 2005, plaintiff requested all documents that in any way relate to him.  The only particulars that plaintiff spelled out in his request was the following: "I request all criminal investigatory and forfeiture records."  Exhibit 24 to the Complaint.

30.  Upon receipt of plaintiff's FOIA request, ATF conducted a search of the Treasury Enforcement Communications

System ("TECS"), a textual database run by the United States Customs Service and containing information that may be of interest to law enforcement agencies.  Exhibit 3 ((declaration of Averill P. Graham) at ¶ 10.

31.  Because the TECS database contains the names of the individuals investigated by ATF, it was the place most likely to locate responsive records.  Id.

32.  The search of the TECS database resulted in the identification of one file from 1978 that was responsive to the FOIA request. Exhibit 3 at ¶ 11.

33.  Further research into the location of this file disclosed that it had been destroyed in 1999 in accordance with the ATF's record retention schedule.  Exhibit 3 at ¶ 12.

34.  The TECS entry relating to plaintiff is being released to him with the redaction of the names of law enforcement personnel that appear in the entry.  These have properly been determined to be exempt from release under Exemptions (b)(2) and (b)(7)(C), 5 U.S.C. § 552(b)(2) and (b)(7)(C).  Exhibit 4 (second declaration of Averill P. Graham) at ¶¶ 5 to 18.

35.  With regard to the assertion of Exemption (b)(7)(C), the agency determined that there was no public interest in the release of the names in the documents that outweighed the individuals' privacy interests.  Exhibit 22 at ¶¶ 12 to 18.

<u>United States Marshals Service ("USMS")</u>

35.  By a letter dated April 7, 2005, plaintiff requested from the USMS all records that in any way relate to him.  To assist in the search, he further specified that the USMS search "ND, Texas and ED, Oklahoma."  Exhibit 29 to the Complaint.

36.  In response to plaintiff's FOIA request, the USMS directed their district offices for the North District of Texas and the Eastern District of Oklahoma to search for responsive documents.  Exhibit 5 (declaration of William E. Boardley) at ¶ 4.

37.  The two district offices searched in all locations that could reasonably be expected to contain responsive documents. <u>Id.</u>

38.  As a result of the search, 31 pages of records relating to plaintiff were located in the Prisoner Processing and Population Management/Prisoner Tracking System and the Warrant Information Network, two systems of records that are used by USMS in carrying out its statutory law enforcement responsibilities. Exhibit 5 at ¶ 5.

39.  By a letter dated July 1, 2005, USMS advised plaintiff that nine of the responsive pages originated with the FBI and had been referred to the FBI for a direct response to plaintiff, pursuant to 28 C.F.R. § 16.4(c)(2).  Exhibit 5 at ¶ 6.

40.  Of the remaining 22 pages of records, 19 were released to plaintiff in their entirety and the remaining three pages were

released to him with minimal redactions, pursuant to Exemption (b)(7)(C) of the FOIA.  Id.

41.  The redactions to the three pages of documents released to plaintiff were of identifying information for third-party individuals.  USMS determined that there was no public interest that overcame the privacy interest of the third parties and that all non-exempt portions of the three pages have been released to plaintiff.  Exhibit 5 at ¶¶ 9 to 11.

<u>Internal Revenue Service ("IRS")</u>

42.  By letters dated April 8 and 15, 2005, and August 3, 2005, plaintiff requested from IRS headquarters and several field offices all records relating to him from 1960 to 2005, with the only further particulars provided being the statement that "I ask for all criminal investigations and forfeiture records." Exhibits 37, 38, 39, 40, and 45.

43.  In initially responding to these requests, the agency advised plaintiff, in error, that the requests failed to adequately describe the records that he sought and also failed properly to establish his identity.  Exhibit 43 to 44 and 48A to the Complaint and Exhibit 2 to Exhibit 6 hereto (declaration of Joel D. McMahan).

44.  Upon the filing of the Complaint, an agency attorney was assigned to assist in the preparation of the response to the Complaint.  In the course of his inquiries as to whether the IRS

had any documents responsive to plaintiff's FOIA requests, he was advised by an IRS employee who was assisting him in the performance of the search that there appeared to have been a criminal prosecution of plaintiff, and the employee recommended a search of the agency's criminal prosecution files.  Exhibit 6 at ¶ 13.

45.  The agency attorney then contacted an IRS supervisor of criminal records.  The supervisor searched the agency's Criminal Investigation Management Information System database, and he was able to determine that three boxes of documents relating to the investigation were in a storage facility in Fort Worth, Texas. Exhibit 6 at ¶ 14.

46.  When the documents were retrieved from storage, it was found that they were grand jury material, and no one at the retrieving office was on the grand jury list, i.e., no one was authorized to review the documents.  Exhibit 6 at ¶ 15.

47.  Because the boxes consisted of grand jury materials, they had to be reviewed by an agent who participated in the investigation and was on the grand jury list, meaning that the agent was authorized to review the material. Exhibit 6 at ¶ 15.

48.  The agent, Diana Megli, who then reviewed the three boxes, determined that all the documents constituted grand jury material that under Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), was exempt from disclosure under the FOIA.  Exhibit 7 (declaration of Diana Megli) at ¶¶ 4 and 5.

12

49. Ms. Megli's declaration explains that the release of the documents would reveal the inner workings of the grand jury, e.g., disclosure would reveal the identities of the grand jury witnesses, details of the evidence gathered during the course of the investigation, and the strategy and direction of the investigation. Id.

50. Reflecting the fact that the boxes were, in effect, the work product of the grand jury, Ms. Megli's declaration notes that substantial amounts of the documents in the three boxes are also protected from disclosure under Exemption (b)(5) (attorney work product) and the exemptions relating to personal privacy, Exemptions (b)(6) and (b)(7)(C). Some of the material is also protected from disclosure under the exemption for confidential informants, Exemption (b)(7)(D). Exhibit 7 at ¶ 4.

51. The release of the withheld boxes would compromise the rule of grand jury secrecy. See supra, ¶¶ 48 to 51.

### Department of Defense ("DOD")

52. By letters dated April 8, 2005, and April 14, 2005, plaintiff requested from the "Director" of the Department of Defense and from the Criminal Investigation Service, Office of the Inspector General, Department of Defense, "all records" that in any way related to him. Exhibits 50 and 51 to the Complaint.

53. DOD's Office of Freedom of Information and Security Review conducted a search of the Defense Clearance and

13

Investigation Index database, which contains references to personal investigations and clearances conducted by or for DOD's investigative organizations.  Based on that search, plaintiff's FOIA request to the Department of Defense was referred to the DOD Office of Inspector General.  Exhibit 53 to the Complaint.

54.  The FOIA request to the DOD sought the same documents as the FOIA request to the DOD's Office of the Inspector General. Exhibit 8 (Declaration of John R. Crane) at ¶ 13.

55.  The personnel at DOD's Office of Inspector General searched various databases and determined that there were documents in DOD's possession that were responsive to plaintiff's FOIA request.  Exhibit 8 at ¶ 12,

56.  Fifty-three pages of documents were released to plaintiff by the DOD Office of Inspector General, some in their entirety but most with redactions based on FOIA Exemptions (b)(2) and (b)(7)(C).  Exhibit 8 at ¶ 29.

57.  DOD's Office of Inspector General engages in law enforcement activity, and the requested records fall into that category.  Exhibit 8 at ¶¶ 3, 28, and 29.

58 and 59. The information withheld under Exemption (b)(2) was so-called "low (b)(2)," case file numbers.

60.  The material withheld under Exemption (b)(7)(C) consists of the names of individuals appearing in the responsive documents.  Exhibit 8 at ¶ 29.

14

61.  The portions of the documents that were not exempt from disclosure were released to plaintiff.  Id.

### Criminal Division, Department of Justice

62.  By a letter dated April 7, 2005, plaintiff requested that the Criminal Division search for all records in any way relating to him, and he added a request that all components of the Criminal Division be searched.  Exhibit 64 to the Complaint.

63.  The Criminal Division requested that plaintiff review a list of its systems of records and indicate which ones he would like to have searched, Exhibit 65 to the Complaint, and plaintiff responded by identifying certain of the systems of records, Exhibits 67 to 71 to the Complaint.

64.  The Criminal Division's search for responsive documents in the systems of records that plaintiff requested to be searched disclosed that there were 12 items responsive to his request, which were found in the system of records JUSTICE/CRM-019 (requests to the Attorney General for approval of applications to federal judges for electronic interceptions).  Exhibit 8 (declaration of Kathy Hsu) at ¶ 12.

65.  The search for responsive documents included a search of the Criminal Division's centralized index file and associated records, which disclosed no records on plaintiff, and in the systems of records specified by plaintiff to be searched.  Exhibit 8 at ¶¶ 13 and 14.

15

66.  All of the system of records specified by plaintiff were searched, and the only responsive documents found were located in the system of records identified in ¶ 64.

67.  Of the 12 items located, items 1 through 3 were released in full and items 4 through 12 were released in part. Id.

65.  Some of the withheld material was properly withheld under Exemption 3 to the FOIA, 5 U.S.C. § 552(b)(3), which protects from disclosure material that another federal statute requires to be withheld from the public.  Exhibit 8 at ¶¶ 17 to 19.

66.  The Exemption (b)(3) statute relied on properly by the Criminal Division is Title III of the Omnibus Crime Control and Safe Street Act of 1968, which imposes restraints on the use and disclosure of intercepted communications.  Exhibit 8 at ¶ 18.

67.  Additional parts of the 12 items were properly withheld from disclosure under Exemption (b)(5) of the FOIA, 5 U.S.C. § 552(b)(5), since they were material protected from disclosure as attorney work product and as being part of the internal deliberative process.  Exhibit 8 at ¶¶ 20 to 33.

68.  More parts of the 12 items were properly withheld from disclosure under the privacy exemptions in the FOIA, Exemptions (b)(6)and (b)(7)(C), which exempts from disclosure material that

would be an unwarranted invasion of personal privacy.  Exhibit 8 at ¶¶ 34 to 36.

69.  In the decision to withhold from release the material referenced in ¶ 68 above, the Criminal Division weighed the privacy interests of the individuals whose names were withheld from release against the public interest in their disclosure and found that there was no public interest in the disclosure of the individuals' names.  Exhibit 8 at ¶¶ 36 and 37.

<u>The National Archives</u>

70.  By a letter dated April 8, 2005, plaintiff requested from the National Archives "all records" that in any way related to him.  Exhibit 77 to the Complaint.

71.  In response, the National Archives searched its general indices relating to Department of Justice case files and found no information in the indices that related to plaintiff.  Exhibit 9 (declaration of Sally Ann Cummings) at ¶ 3, and Exhibits 81 and 82 to the Complaint.

<u>United States Postal Service ("USPS")</u>

72.  By a letter dated April 8, 2006, plaintiff requested from USPS all records relating in any way to him; however, he narrowed this request by stating that he sought all mail-watch and other investigatory records in four cities.  Exhibit 83 to the Complaint.

73.  USPS advised plaintiff that a search of the Postal Inspection Service's headquarters and at its field offices responsible for the four identified cities had failed to find any responsive documents.  There was no record that plaintiff had ever been the subject of a mail cover request or of an investigation by the Postal Inspection Service.  Exhibit 11 (declaration of Betty L. White) at ¶ 6.

<u>Federal Bureau of Prisons ("BOP")</u>

74.  By a letter dated April 8, 2005, plaintiff sought from BOP all records that related to him and asked that a search be made at certain institutions where he had been placed.  Exhibit 92 to the Complaint.

75.  BOP responded to plaintiff by a letter dated May 23, 2005.  The letter advised plaintiff that BOP interpreted his "all records" request as seeking access to plaintiff's central file records.  Exhibit 93 to the Complaint.

76.  Plaintiff was further advised that if this interpretation of the request was incorrect, he should submit another request that specifically advised what additional documents he was seeking, Exhibit 93 to the Complaint and Exhibit 12 (declaration of Karen Summers) at ¶ 6, but no such further request has been made by plaintiff.  <u>Cf.</u> Exhibits 92-97 to the Complaint and Exhibit 12.

18

77.  Plaintiff was provided access to his central file and medical records (except for material in the FOIA exempt portion of his central file record), and he requested and received 283 pages from his medical records.  Exhibit 12 at ¶¶ 7 and 8.

78.  Plaintiff was advised by a letter dated June 8, 2005, that ten documents had been found in the FOIA exempt portion of his central files record and that upon payment of $19.30 the documents, some with redactions, would be sent to him.  Exhibit 12 at ¶ 9.

79.  Plaintiff, in a letter to BOP dated July 26, 2005, stated that he had arranged for the $19.30 to be sent to BOP; however, BOP has not received the money.  Exhibit 97 to the Complaint.  Consequently, the documents have not been released to plaintiff.  Exhibit 12 at ¶ 11.

80.  With regard to the 10 documents, BOP has determined that five of them can be released to plaintiff in full but that the other five can only be released with the redaction of information that is exempt from disclosure under the FOIA. Exhibit 12 at ¶ 12.

81.  Three of the documents, with central inmate monitoring information, have been properly redacted under Exemptions (b)(2)(high), (b)(7)(C), and (b)(7)(F), and two of the documents have been properly redacted under Exemption (b)(2)(high) because

19

they contain certain central inmate monitoring review informa-
tion.  Exhibit 12 at ¶ 13.

Tax Division of the Department of Justice

82.  By a letter to the Tax Division, dated April 7, 2004,
plaintiff asked for "all records" that in any way related to him.
Exhibit 100 to the Complaint.

83.  The Tax Division, by a letter dated June 23, 2005,
asked plaintiff to present to the Tax Division proper
identification as to his identity, Exhibit 101 to the Complaint,
and plaintiff appealed this decision to the Department of
Justice's Office of Information and Privacy ("OIP") on the
grounds that he had properly identified himself, Exhibit 103 to
the Complaint.

84.  OIP remanded the matter to the Tax Division with the
direction that a search for responsive documents be conducted.
Exhibit 105 to the Complaint.

85.  The Tax Division conducted a search of its automated
case management system, and found one file under plaintiff's
name.  Exhibit 13 at ¶ 2.

86.  The four documents in this file were produced to
plaintiff, one in full and three with redactions to protect from
disclosure names of individuals appearing in the documents.  The
names were properly redacted because they are exempt from
disclosure under Exemption (b)(7)(C).  Exhibit 13 at ¶ 5.

The Bureau of Customs and Border Protection ("CBP")

87.  By a letter dated April 8, 2005, plaintiff sought all records that in any way related to him.  Exhibit 100 to the Complaint.

88.  CBP responded to plaintiff by asking to further identity who he was, a response that was in error in that plaintiff had properly identified himself in his request. Exhibit 14 (declaration of Dorothy Pullo) at ¶ 7.

89.  CBP proceeded to search the relevant law enforcement database, TECS, and found in that database one CBP document, which is being produced as an attachment to Exhibit 14.

90.  The document has been properly redacted under the following exemptions, Exemption (b)(2)(both high and low), Exemption (b)(7)(C), and Exemption (b)(7)(E); all non-exempt material in the document has been released.  Exhibit 14 at ¶¶ 8 to 14.

Central Intelligence Agency ("CIA")

91.  By a letter dated April 7, 2005, plaintiff requested from the CIA all records that in any way related to him.  Exhibit 112 to the Complaint.

92.  The CIA conducted a diligent search of its compart-mentalized databases and indices and did not find any responsive records.  Exhibit 15 (declaration of Scott A. Koch) at passim.

Executive Office for United States Attorneys (EOUSA)

21

93.  By a letter dated April 7, 2005, plaintiff requested all records that in any way related to him and specified that he wanted the following offices to be searched:

> Please search ND. TEX; ED, OK; Pheonix (sic)
> & Tucson, AZ; Little Rock, AR and
> Philadelphia, Pensylvania districts.  I want
> all prosecution and contemplated prosecution
> records including those that are public
> record.

Exhibit 118 to Complaint.

94.  Upon receipt of the FOIA request, EOUSA split the request into separate searches for each of the five districts covered by plaintiff's request and advised plaintiff that he would be subject to aggregate search and copy fees for the request.  Exhibit 16 (declaration of David Luczynski) at ¶ 5.

95.  By a letter dated July 29, 2005, plaintiff was advised that he owed a search fee of $14.00, and he was advised that if the money was not received within 30 days, the other two searches would be closed.  Exhibit 16 at Exhibit I.

96.  Plaintiff filed an administrative appeal of what he characterized as "the EOUSA threat to stop processing my other requests unless I pay $14."  He went on to state that the $14 was on its way to EOUSA.  Exhibit 137 to the Complaint.  He later, however, stated that he had tried to send the money "but the BOP incompetence caused the delays, not me."  Exhibit 140b to the Complaint.

97.  Because plaintiff did not pay within 30 days the $14 charge for search time that had been accumulated in regard to the processing of his requests for three of the districts, the EOUSA stopped processing his other requests.  Additionally, given his failure to pay the $14, EOUSA advised plaintiff that he would have to pay in advance a $70 search fee for the search of his remaining requests.  Exhibit 16 at ¶ 11.

98.  Plaintiff has not paid these search fees.  Exhibit 16 at ¶ 13.

99.  With regard to the searches of the U.S. Attorney's Offices that had been completed before the failure to pay the fees, one office (Oklahoma) found two pages of documents responsive to the request.  One of these was released in part and one was withheld in full.  Exhibit 140d to the Complaint.

100.  The material withheld in these two pages was properly withheld under Exemptions (b)(5), (b)(6), and (b)(7)(C), and all non-exempt material that could be segregated for release was released to plaintiff.  Exhibit 17 (second declaration of David Luczynski).

<u>United States Secret Service</u>

101.  By a letter dated April 8, 2005, plaintiff requested from the Secret Service all records that in any way related to him.  Exhibit 141 to the Complaint.

102.  To determine whether responsive material existed, the Secret Service searched its computerized database, the Master Central Index, which should contain information on persons of interest to the Secret Service.  Only one possible reference to plaintiff (the reference is to a "Robert MacKay") was found but no file associated with the name could be located.  Exhibit 18 (declaration of Mark Sullivan) at ¶¶ 6 to 12.

103.  Plaintiff was advised that no records could be found in response to his request. Exhibit 18 at ¶ 13.

Department of State

104.  By a letter dated April 8, 2005, plaintiff requested from the Department of State all records that in any way related to him.  Exhibit 147 to the Complaint.

105.  In order to conduct a proper search, the Department of State responded by asking plaintiff to explain why the Department of State might have records about him, Exhibit 19 (declaration of Margaret P. Grafeld) at ¶ 5, and plaintiff responded by stating that the Department of State may have records relating to his alleged visit to Costa Rica to look for property and land investments, Exhibit 19 at ¶ 6.

106.  The Department of State then searched the only two of its records systems that were reasonably likely to have responsive documents (if any existed) – (1) the records of the Department of State Office of Passport Services and (2) the

Central Foreign Policy Files, which is the Department of State's primary records system, a word-searchable electronic database of millions of records.  Exhibit 19 at ¶ 8.

107.  The Department of State's search uncovered five responsive documents (all of which were located in the records of the Office of Passport Services), two of which were released in full to plaintiff and three of which were redacted before release to plaintiff.  Exhibit 19 at ¶¶ 11-12.

107.  The Department of State is responsible for the issuance of passports to U.S. citizens.  Two of the three records redacted by the Department of State are passport lookout records, which are filed by law enforcement and other authorities to indicate that additional information is needed before the Department of State passport examiners can take action on a passport application.  Exhibit 19 at ¶¶ 18-19, 24.  Lookout notices help to prevent the issuance of passports to fugitives and to others who may be wanted for law enforcement purposes.  Exhibit 19 at ¶ 19.  The only information redacted from these records is the name of the Department of State employee who prepared the lookout notices.  Exhibit 19 at ¶ 24.

108.  The third record redacted by the Department of State is a law enforcement request from the DEA to access Mr. Mackay's passport file in connection with an investigation.  Exhibit 19 at ¶¶ 20 and 25.  The only information redacted from this record is

25

the name of the person who appears in the "reference" line of the request and the name of the DEA special agent/representative who signed the request.  Exhibit 19 at ¶ 25.

109.  The Department of State has exempted portions of its passport records (such as the two passport lookout notices and one law enforcement request redacted in this lawsuit) from Privacy Act disclosure under Privacy Act exemption (k)(2). Exhibit 19 at ¶¶ 22-23; 22 C.F.R. 171.36(b)(2).

110.  The names of individuals in the three redacted documents described above were withheld under FOIA Exemption (b)(6) because there was no public interest in their release that outweighed the privacy interests of the individuals.  Exhibit 19 at ¶¶ 13-16.

111.  The names of individuals in the three redacted documents described above were also withheld under Exemption (b)(7)(C) as an unwarranted invasion of personal privacy. Exhibit 19 at ¶¶ 17-21.  (All three redacted documents were compiled for law enforcement purposes.  Exhibit 19 at ¶¶ 18-20.)

112.  The three redacted Department of State documents do not contain any additional non-exempt information that can be segregated and released.  Exhibit 19 at ¶¶ 24-25.

<u>Office of the Attorney General</u>

113.  By a letter dated April 8, 2005, plaintiff requested from the office of the Attorney General all records that in any way related to him.  Exhibit 154 to the Complaint.

114.  In response to the request, a search was conducted of the electronic databases of the Departmental Executive Secretariat, which is the official records repository of the Office of the Attorney General.  Exhibit 20 (declaration of Melanie Ann Pustay) at ¶ 4.

115.  This search revealed no records responsive to plaintiff's FOIA request.  Exhibit 20 at ¶ 5.

<u>National Security Agency (NSA)</u>

116.  By a letter dated April 8, 2005, plaintiff requested from NSA all records that in any way related to him.  Exhibit 163 to the Complaint.

117.  In response, NSA conducted a search of its personnel, security, and training systems, which were the systems that NSA believed were most likely to have responsive material.  Exhibit 21 (declaration of Louis F. Giles) at ¶ 7.

118.  No documents were found that were responsive to plaintiff's FOIA request.  Exhibit 21 at ¶ 5.

<u>Interpol - U.S. National Central Bureau ("USNCB")</u>

119.  By a letter dated April 8, 2005, plaintiff requested from Interpol – U.S. National Central Bureau, a component of the

Department of Justice, all records that related to him in any way.  Exhibit 166 to the Complaint.

120.  In response to this request, USNCB searched its computerized system of records and its paper copy indices to its administrative files.  Exhibit 22 (declaration of Dorothy S. Beaty) at ¶¶ 4 and 5.

121.  No records responsive to the FOIA request were found.  Exhibit 22 at ¶ 9.

122.  USNCB later realized that it had not searched the TECS computerized system to which it had access, so a search of that computerized database was conducted.  Exhibit 22 at ¶ 12.

123.  The search of that database uncovered one record responsive to the FOIA request that belonged to another agency.  Id.

124.  USNCB was advised by the United States Attorney's Office that the record would be addressed by ATF.  Exhibit 22 at ¶ 13; see ¶ 34, supra.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney
        /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT A. MACKAY,                  )
                                   )
              Plaintiff,           )
                                   )
         v.                        )    Civil Action No. 05-2363 JR
                                   )
DRUG ENFORCEMENT                   )
ADMINISTRATION, et al.,            )
                                   )
              Defendants.          )
_____  )

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, a federal prisoner serving a life sentence for drug trafficking, submitted Freedom of Information Act ("FOIA") requests to the following components of the United States government: the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), the United States Marshals Service ("USMS"), the Internal Revenue Service ("IRS"), the Department of Defense ("DOD"), the Criminal Division of the United States Department of Justice, the National Archives and Records Administration, the United States Postal Service ("USPS"), the Federal Bureau of Prisons ("BOP"), the Tax Division of the United States Department of Justice, the Bureau of Customs and Border Protection (CBP"), the Central Intelligence Agency ("CIA"), the Executive Office for the United States Attorneys ("EOUSA"), the United States Secret Service, the Department of State, the Office of the Attorney General, the National Security

Agency ("NSA"), and Interpol - United States National Central
Bureau ("USNCB").  Unsatisfied with the responses by the
defendants to his requests, plaintiff filed this lawsuit.
Defendants now move for summary judgment.

<u>Summary Of Argument</u>

    This memorandum first examines the law that governs the
grant of summary judgment. Next, we analyze four issues that are
separate from the issue of the validity of the defendants'
assertion of exemptions to production under the FOIA.  The first
is the adequacy of the declarations submitted by defendants as a
basis for deciding the case.  Next we turn to the adequacy of the
searches that were conducted to find documents responsive to the
FOIA requests, an analysis that concludes that the searches were
adequate, given the lack of specificity in most of the requests
as to where responsive documents might be found.  This lack of
specificity means that plaintiff cannot complain that the compo-
nents' searches for responsive documents were principally con-
ducted through automated and manual databases and indices.

    Next the implications of the failure by plaintiff to pay fee
requests from three of the components, DEA, BOP, and EOUSA, are
examined.  It will be shown that the three components properly
decided not to proceed further with the handling of plaintiff's
FOIA requests until they were paid.  We then turn to the issue of
segregability, i.e., did the agencies produce to plaintiff all

segregable portions (i.e., non-exempt portions) of the documents as to which FOIA exemptions were asserted.  It will be shown that they did so.

The remainder of this memorandum addresses the FOIA exemptions asserted by the defendants to withhold documents, either in whole or in part, from plaintiff.  As to each claimed exemption, it will be shown that the components acted properly in asserting the exemptions.

<u>Factual Background</u>

The Court is referred to defendants' statement of material facts as to which there is no genuine issue.  The statement provides the background for the following analysis.

<u>Standard For Granting Summary Judgment</u>

Where no genuine dispute exists as to any material fact, summary judgment is required.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  <u>Id.</u> at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  <u>Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations but must instead proffer specific

3

facts showing that a genuine issue exists for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir.  1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to

secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[1]  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the court and the plaintiff with affidavits or declarations and other evidence that show that the withheld information is exempt from disclosure under the FOIA. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d

---

1.  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

1381, 1384, 1386 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937

(1980); <u>Church of Scientology v. U.S. Dept. of Army</u>, 611 F.2d

738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an

agency in a FOIA case solely on the basis of agency affidavits

[or declarations] "when the affidavits describe 'the documents

and the justifications for nondisclosure with reasonably specific

detail, demonstrate that the information withheld logically falls

within the claimed exemption, and are not controverted by either

contrary evidence in the record nor by evidence of agency bad

faith.'" <u>Trans Union LLC v. Federal Trade Commission</u>, 141 F.

Supp. 2d 62, 67 (D.D.C. 2001) (<u>quoting</u> <u>Military Audit Project v.</u>

<u>Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)); <u>see</u> <u>also</u> <u>Public</u>

<u>Citizen, Inc. v. Dept. of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C.

2000); <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102

(D.C. Cir. 1983); <u>Citizens Commission on Human Rights v. FDA</u>, 45

F.3d 1325, 1329 (9th Cir. 1995); <u>Bowen v. FDA</u>, 925 F.2d 1224,

1227 (9th Cir. 1991).  When the pleadings, supplemented by

affidavits or declarations, show no genuine issue as to any

material fact and the defendant is entitled to judgment as a

matter of law, summary judgment should be granted to the

defendant.  <u>Perry v. Block</u>, 684 F.2d 121 (D.C. Cir. 1982).

<u>Defendants Have Submitted Proper Vaughn Indices</u>

In moving for summary judgment in a FOIA case, agencies must

establish a proper basis for their withholding of responsive

documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F.Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the review-ing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[2]

---

2. "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

The <u>Vaughn</u> index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. <u>See Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

In the case at bar, the components that found documents responsive to the requests have submitted declarations prepared by individuals familiar with the handling of the requests. Some of the declarations attach copies of the redacted documents, thereby showing the context of the assertion of particular exemptions. <u>See</u>, <u>e.g.</u>, the declarations submitted by the FBI and DOD's Office of the Inspector General. Other of the declarations, where there are fewer documents to address, describe in their text the exemptions that were asserted and the basis for asserting them. Both approaches meet the requirements of an adequate <u>Vaughn</u> index.

8

<u>Adequate Searches Were Conducted</u>

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 68 (D.C. Cir. 1990); <u>Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  The established reasonableness standard by which FOIA searches are judged "does not require absolute exhaustion of the files; instead it requires a search reasonably calculated to uncover the sought materials." <u>Miller</u>, 779 F.2d at 1384-85.  Thus, "the issue in a FOIA case is not whether the agencies' searches uncovered responsive documents, but rather whether the searches were reasonable." <u>Moore v. Aspin</u>, 916 F. Supp. 32, 35 (D.D.C. 1996); <u>see</u> <u>also</u> <u>Fitzgibon v. U.S. Secret Service</u> , 747 F. Supp. 51, 54 (D.D.C. 1990); <u>Meeropol v. Meese</u>, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

An agency demonstrates that it conducted a reasonable search by showing "that it made a good faith effort to conduct a FOIA search for requested records by using methods that can reasonably be expected to produce the information requested." <u>Western Center for Journalism v. I.R.S.</u>, 116 F. Supp.2d 1, 9 (D.D.C. 2000); <u>Oglesby</u>, 920 F.2d at 68.  The search standards established under the FOIA do not require an agency to search every record system, but rather, the agency need only search those systems in

which it believes responsive records are likely to be located.
Oglesby, 920 F.2d at 68.  Even when a requested document indis-
putably exists or once existed, summary judgment will not be
defeated by an unsuccessful search for the document so long as
the search was diligent.  Nation Magazine, Washington Bureau v.
U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).
Additionally, the mere fact that a document once existed does not
mean that it now exists; nor does the fact that an agency created
a document necessarily imply that the agency has retained it
Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

Simply stated, the adequacy of the search is "dependent upon
the circumstances of the case."  Truitt v. Dept. of State, 897
F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not
"whether there might exist any other documents responsive to the
request, but rather whether the search for those documents was
adequate."  Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C.
Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476,
1485 (D.C. Cir. 1984)).

The FOIA requires that an access request "reasonably
describe" the records sought.  5 U.S.C. § 552(a)(3)(A).  Plain-
tiff's requests seeking "all records" that in any way relate to
him did not meet this standard.  Given this lack of specificity,
plaintiff cannot complain that the agencies responded to his
requests by using the reasonable approach of reviewing their

10

computerized and manual databases and indices.  Where such review
resulted in finding files where responsive documents might exist,
the agencies proceeded to review these files.  It follows that
the agencies' searches for responsive documents were reasonable.

### Plaintiff's Failure To Pay Certain Fees

In responding to plaintiff's FOIA requests, three of the
components, DEA, EOUSA, and BOP, stopped their processing of
the requests at different stages in the process due to plain-
tiff's failure to pay fees.  DEA advised plaintiff that it would
not commence processing the request unless he paid in advance the
anticipated fees (which were in excess of $1,800).  EOUSA stopped
the response process after certain initial responses had been
made, due to plaintiff's failure to pay earlier fee requests for
the discrete parts of the request that had been completed.  BOP
completed the response process and was ready to provide the
documents that could be released to plaintiff.  BOP requested,
however, that plaintiff pay the fees associated with the response
process before it would send the documents to him.  All three of
these actions were proper under the FOIA.

By a letter dated March 22, 2006, DEA advised plaintiff that
the estimated fee for the search and processing of his request
was $1,848.00.  Exhibit 1 at ¶ 14.  Plaintiff was advised by DEA
that, since he had no history of paying FOIA fees, he would have
to make an advance payment before DEA proceeded with the proces-

sing of his request, Exhibit 1 at ¶ 20 and Exhibit B to Exhibit 1, but no advance payment has been made, id.  This course of action was consistent with both the FOIA and the Department of Justice's FOIA regulations.  5 U.S.C. § 552(a)(4)(A)(v) (agency can require advance payment where anticipated fees exceed $250) and 28 C.F.R. § 16.11(i)(2)(same).

Upon receipt of plaintiff's FOIA request, EOUSA split the request into separate searches for each of the five districts covered by plaintiff's request, and EOUSA advised plaintiff that he would be subject to aggregate search and copy fees for the request.  Exhibit 16 (declaration of David Luczynski) at ¶ 5.  By a letter dated July 29, 2005, plaintiff was advised that he owed a search fee of $14.00, and he was advised that, if the money was not received within 30 days, the remaining searches of two of the districts would not be completed.  Exhibit 16 at Exhibit I.

Plaintiff filed an administrative appeal of what he charac-erized as "the EOUSA threat to stop processing my other requests unless I pay $14."  He went on to state that the $14 was on its way to EOUSA.  Exhibit 137 to the Complaint.  He later, however, stated that he had tried to send the money "but the BOP incompe-tence caused the delays, not me."  Exhibit 140b to the Complaint.

Because plaintiff did not pay within 30 days the $14 charge for search time that had been accumulated in regard to the processing of his requests for three of the districts, EOUSA

12

stopped processing the remaining parts of his request.  Additionally, given his failure to pay the $14, EOUSA advised plaintiff that he would have to pay in advance a $70 search fee for the search of his remaining requests.  Exhibit 16 at ¶ 11.  Plaintiff has not paid these search fees.  Exhibit 16 at ¶ 13.  This course of action was proper.  5 U.S.C. § 552(a)(4)(A)(v) (agency can require advance payment where requester has previously failed to pay fees in a timely fashion) and 28 C.F.R. § 16.11(i)(3)(same).

With regard to BOP, plaintiff was advised by a letter dated June 8, 2005, that ten documents had been found in the FOIA exempt portion of his central file record and that upon payment of $19.30 the documents, some with redactions, would be sent to him.  Exhibit 12 at ¶ 9.  Plaintiff, in a letter to BOP dated July 26, 2005, stated that he had arranged for the $19.30 to be sent to BOP; however, BOP has not received the money.  Exhibit 97 to the Complaint.  Consequently, the documents have not been released to plaintiff.  Exhibit 12 at ¶ 11.  This course of action was proper under the FOIA, since the processing of the request had been completed.  Strout v. United States Parole Commission, 40 F3d 136, 139 (6th Cir. 1996) and 28 C.F.R. § 16.11(i)(1)(request for payment of fees after response has been completed, but before the release of the documents to the requester, is not a request for advance payment).

Non-Exempt Portions of Documents Were Released

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

To demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which

14

taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, all information that can be released to plaintiff has been provided to him. See Exhibit 2(FBI) at ¶¶ 4, 6, and 129; Exhibit 4 (ATF) ¶ 4 and Exhibit A thereto; Exhibit 5 (USMS) at ¶ 11; Exhibit 8 (DOD Inspector General) at ¶ 29; Exhibit 9 (Criminal Division) at ¶¶ 12 and 27; Exhibit 12 (BOP) at ¶ 12; Exhibit 13 (Tax Division) at ¶ 5; Exhibit 14 (CBP) at ¶ 15; Exhibit 16 (EOUSA) ¶ 18; Exhibit 17 (second EOUSA declaration) at ¶ 15, and Exhibit 19 (State Department) at ¶¶ 11, 12, 24, and 25.

## The FOIA Exemptions Were Properly Applied

As explained below, defendants withheld documents responsive to plaintiff's FOIA requests pursuant to FOIA Exemptions (b)(2), (b)(3); (b)(6); (b)(7)(C); (b)(7)(D); (b)(7)(E); and (b)(7)(F). The assertion of these exemptions was proper.

## A. Exemption (b)(2)

Section 552 (b)(2) of the FOIA exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption (b)(2) applies primarily to two categories of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public

interest "where disclosure may risk circumvention" of statutes or agency regulations. <u>Dept. of Air Force v. Rose</u>, 425 U.S. 352, 369-70 (1976); <u>National Treasury Employees Union v. U.S. Customs Service</u>, 802 F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). The second category, sometimes referenced in the governing case law as the "high" (b)(2) category," <u>see</u> <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992), exempts from mandatory disclosure documents relating to more substantive internal matters. <u>Id</u>. The first category is sometimes referred to as "low" (b)(2).

With regard to the "high" (b)(2) category, an agency is authorized to withhold documents to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, <u>id</u>.; would disclose guidelines for law enforcement investigations; or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. <u>See</u> <u>Crooker</u>, 670 F.2d 1051 (D.C. Cir. 1981) (<u>en</u> <u>banc</u>); <u>Hardy v. ATF</u>, 631 F.2d 653, 656 (9th Cir. 1980).

In this case, the assertions by the components of Exemption (b)(2) was proper, both as to the "low" and "high" parts of that exemption. <u>See</u> Exhibit 2 (FBI) at ¶¶ 65-69; Exhibit 8 (DOD

16

Inspector General) at ¶ 29; Exhibit 12 (BOP) at ¶ 26; and Exhibit
14 (CBP) at ¶¶ 8-11.

### B. Exemption (b)(3)

Exemption (b)(3) of the FOIA exempts from disclosure those
records that are specifically prohibited from disclosure by
another federal statute provided that one of these two
requirements are met: (a) the statute leaves no discretion as to
the withholding; or (b) the statute establishes particular
criteria for withholding or refers to particular types of
materials to be withheld.  5 U.S.C. § 552(b)(3) (2000); see Irons
& Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979).  In this
case, two of the components, the Criminal Division of the
Department of Justice and the IRS asserted Exemption (b)(3).

The Criminal Division asserted the exemption to protect from
disclosure communications that were intercepted pursuant to the
Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§
2510-2521, which has very strict limitations on the handling and
further release of such communications.  See Exhibit 9
(declaration of Kathy Hsu) at ¶¶ 17 and 19.  In addition, the IRS
has asserted the exemption to protect from disclosure three boxes
of material that constitute work product used to conduct a grand
jury investigation.

It is well established that Federal Rule of Criminal Proce-
dure 6(e) embodies a broad policy of preserving the secrecy of

17

grand jury material regardless of the substance in which the material is contained.  Iglesias v. CIA, 525 F. Supp. 547, 556 (D.D.C. 1981).  Yet defining the parameters of Rule 6(e) protection is not always a simple task and has been the subject of much litigation.  In Fund for Constitutional Government v. National Archives & Records Service, 656 F.2d at 869 (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980)), our Court of Appeals stated that the scope of the secrecy that must be afforded grand jury material "is necessarily broad" and, consequently, that "it encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'"

However, in its scrutiny of the scope of Rule 6(e) in Senate of Puerto Rico v. United States Department of Justice, 823 F.2d 574 (D.C. Cir. 1987), the Court held that neither the fact that information was obtained pursuant to a grand jury subpoena, nor the fact that the information was submitted to the grand jury, is sufficient, in and of itself, to warrant the conclusion that disclosure is necessarily prohibited by Rule 6(e).  Rather, an agency must establish a nexus between the release of that information and "revelation of a protected aspect of the grand jury's

18

investigation."  823 F.2d at 584.  It is submitted that the
declaration by Ms. Megli of the IRS does precisely this; the
release of the three boxes of documents would, to use the
language of Fund for Constitutional Government, reveal the
identities of witnesses, the substance of the testimony, the
strategy or direction of the investigation, and the like. The
material was properly withheld under Exemption (b)(3).

### C. Exemption (b)(5)

Exemption (b)(5) encompasses "inter-agency or intra-agency
memorandums or letters which would not be available by law to a
party . . . in litigation with the agency."  5 U.S.C. §
552(b)(5).  It exempts those documents normally privileged in the
civil discovery context.  NLRB v. Sears, Roebuck & Co., 421 U.S.
132, 149; (1975); Sterling Drug, Inc. v. FTC, 450 F.2d 698,
704-705 (D.C. Cir. 1971).  The language of the statute unequi-
vocally incorporates all civil discovery rules into FOIA Exemp-
tion (b)(5).  Martin v. Office of Special Counsel, 819 F.2d 1181,
1185 (D.C. Cir. 1987); see also Badhwar v. Department of the Air
Force, 829 F.2d 182, 184 (D.C. Cir. 1987).

Records or information must meet two criteria in order to
fall within the purview of Exemption 5.  First, they must be
"intra-agency or inter-agency memorandums."  Secondly, the
information must fall within one of the civil discovery
privileges.  One such privilege incorporated into Exemption 5 is

19

the deliberative process privilege.  The deliberative process privilege constitutes "the 'generally . . . recognized' privilege for 'confidential inter-agency advisory opinions' . . . the disclosure of which would be injurious to the consultative functions of government. . . ."  NLRB v. Sears, Roebuck & Co., 421 U.S. at 151.  Its purpose, therefore, is to prevent injury to the quality of agency decisions.  Id.

In determining whether a document is predecisional, courts will look to whether it was generated before the adoption of an agency policy and whether the document is "deliberative" -- whether it reflects the give-and-take of the consultative process.  The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.  Coastal States Gas Corp. v. Department of Energy, 617 F.2d 853, 866 (D.C. Cir. 1980).

The assertion in this case of Exemption (b)(5)(6) was proper.  See Exhibit 9 (Criminal Division) at ¶¶ 20-33; and Exhibit 17 (second EOUSA declaration) at ¶ 7.

D. Exemption (b)(6)

Exemption (b)(6) of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'simi-

20

lar files' to include all information that applies to a parti-cular individual." <u>Lepelletier v. FDIC</u>, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting <u>Department of State v. Washington Post Co.</u>, 456 U.S. 595, 602 (1982)) (emphasis added). The Court has also emphasized that "both the common law and the literal under-standing of privacy encompass the individual's control of information concerning his or her person." <u>U.S. Department of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 763 (1989).

To determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." <u>Lepelletier</u>, 164 F.3d at 46 (citing <u>United States Dept. of Defense Dept. of Military Affairs v. FLRA</u>, 964 F.2d 26, 29 (D.C. Cir. 1992) and quoting <u>Department of Air Force v. Rose</u>, 425 U.S. 352, 372 (1976)) (internal quotation marks omitted). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"

Lepelletier, 164 F.3d at 46 (quoting United States Department of
Defense v. FLRA, 510 U.S. 487, 497 (1994). See also Reporters
Committee, 489 U.S. at 773.   Information that does not directly
reveal the operation or activities of the federal government
"falls outside the ambit of the public interest that the FOIA was
enacted to serve." Id. at 775.  Further, "something, even a
modest privacy interest, outweighs nothing every time." National
Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879
(D.C. Cir. 1989).

    In this case, the FBI properly asserted Exemption (b)(6),
Exhibit 2 at ¶¶ 70-87, as did the Criminal Division, Exhibit 9 at
¶¶ 34 to 37.  The State Department also properly asserted the
exemption, Exhibit 19 at ¶¶ 13 to 16.

### E. Exemption (b)(7)(C)

    The FOIA exempts from the requirement of disclosure

> (7)  records or information compiled for law
> enforcement purposes, . . . to the extent
> that the production of such law enforcement
> records or information . . . (C) could
> reasonably be expected to constitute an
> unwarranted invasion of personal privacy....

5 U.S.C. § (b)(7)(C).  This exemption protects the identities of
suspects and other persons of investigatory interest who are
identified in agency records in connection with law enforcement
investigations. Reporters Comm. for Freedom of the Press v. U.S.
Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on
other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other

22

grounds, 489 U.S. 749 (1989); <u>Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.</u>, 72 F.3d 897, 904 (D.C. Cir. 1996).  Indeed, the mere mention of identities of witnesses or other persons in law enforcement files in such a way as to associate them with criminal activity is subject to protection under Exemption (b)(7)(C).  <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 780; <u>Nation Magazine v. U.S. Customs Service</u>, 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); <u>SafeCard Services, Inc. v. S.E.C.</u>, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

In addition, the names of law enforcement officers who work on criminal investigations have been protected against release by Exemption (b)(7)(C).  <u>Davis v. U.S. Dep't of Justice</u>, 968 F.2d 1276, 1281 (D.C. Cir. 1992); <u>Lesar v. U.S. Dept of Justice</u>, 636 F.2d 472, 487-88 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  <u>Computer Prof'ls for Social Responsibility</u>, 72 F.3d at 904; <u>Farese v. U.S. Dep't of Justice</u>, 683 F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to figure out the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish the privacy interests at stake.  <u>Fitzgibbon v. CIA</u>, 911 F.2d 755 (D.C. Cir. 1990); <u>Weisberg v. Dep't of Justice</u>, 745 F.2d at 1476.

Once a privacy interest has been established, it must be balanced against the public interest, if any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dep't of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ing] light on an agency's performance of its statutory duties."  Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 489 U.S. 749, 773 (1989).  This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'"  Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investiga-tion).  Furthermore, in order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of the public interest, but also that the public interest is both significant and compelling.  Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

24

In this case, several agencies withheld documents pursuant to Exemption 7(C).  The matters as to which they asserted this exemption all qualified as law enforcement activity.  These agencies are the FBI, ATF, USMS, DOD Inspector General, Criminal Division of the Department of Justice, BOP, Tax Division of the Department of Justice, CBP, and EOUSA.  Each agency properly evaluated the responsive information in light of Exemption 7(C) and withheld protected information.  See Exhibit 2 (FBI) at ¶¶ 94, 97, 99, 101, 104, and 106; Exhibit 4 (ATF) at ¶¶ 10 to 18; Exhibit 5 (USMS) at ¶ 9; Exhibit 8 (DODIG) ¶ 28; Exhibit 9 (Criminal Division) at ¶¶ 37 and 38 Exhibit 13 (Tax) at ¶ 3 and ¶ 5; Exhibit 14 (CBP) at ¶ 13; Exhibit 12 (BOP) at ¶¶ 13, 20, and 21;; Exhibit 17 (EOUSA) at ¶ 12; and Exhibit 19 (State Department) at ¶¶ 17 to 21.

## F. Exemption (b)(7)(D)

Exemption (b)(7)(D) of the FOIA protects

> records or information compiled for law
> enforcement purposes [which] could reasonably
> be expected to disclose the identity of a
> confidential source -- including a state,
> local, or foreign agency or authority or any
> private institution which furnished
> information on a confidential basis -- and,
> in the case of a record or information
> compiled by a criminal law enforcement
> authority in the course of a criminal
> investigation, or by an agency conducting a
> lawful national security intelligence
> investigation, information furnished by a
> confidential source.

25

5 U.S.C. § 552 (b)(7)(D).  Its purpose "is to keep open the
Government's channels of confidential information."  <u>Birch v.
United States Postal Serv.</u>, 803 F.2d 1206, 1212 (D.C. Cir. 1986).

Successful law enforcement investigations depend on
information provided by individuals who may be exposed to
relentless harassment and possible harm if their identities are
revealed.  <u>Gula v. Meese</u>, 699 F. Supp. 956, 960 (D.D.C. 1988).
Accordingly, exemption (b)(7)(D) not only protects obviously
identifying information, such as an informant's name and address,
but also all information that would reveal the source's identity.
<u>See</u> <u>Stone v. Defense Investigative Serv.</u>, 816 F. Supp. 782, 788
(D.D.C. 1993) (protecting information that "was 'so singular that
to release it would likely identify the individual, particularly
to a knowledgeable party'").  Additionally, in order to prevent
indirect source identification, even the name of a third party
who is not a confidential source, but who acted as an interme-
diary for the source in his/her communications with the agency,
can be withheld.  <u>Birch</u>, 803 F.2d at 1212.

In this case, the FBI asserted Exemption (b)(7)(D) to
protect the identity of confidential sources.  Exhibit 2 (FBI) at
¶¶ 108-125.  The IRS also noted that among the grand jury
materials for which they asserted Exemption (b)(3) were materials
protected by Exemption (b)(7)(D).  Exhibit 7 at ¶ 4.

26

G. <u>Exemption (b)(7)(E)</u>

Exemption (b)(7)(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." <u>Mittleman v. Office of Personnel Mgmt</u>, 76 F.3d 1240, 1243 (D.C. Cir. 1996), <u>cert</u>. <u>denied</u>, 519 U.S. 1123 (1997) (citing <u>Pratt v. Webster</u>, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing <u>Pratt v. Webster</u>, 673 F.2d 408, 418 (D.C. Cir. 1982)). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality." <u>Keys</u>, 830 F.2d at 340 (quoting <u>Pratt</u>, 673 F.2d at 421).

27

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. United States Dep't of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)). While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. See, e.g., Coleman v. FBI, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); Perrone v. FBI, 908 F.Supp. 24, 28 (D.D.C. 1995) (applying (b)(7)(E) to type of polygraph test, type of machine used, polygraph questions and sequence). In justifying the application of Exemption (b)(7)(E) the agency may describe the general nature of the technique while withholding the full details. See, e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir. 1991). The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld. Coleman, 13 F. Supp. 2d at 83; Smith, 977 F.Supp. at 501.

Exemption (b)(7)(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." See, e.g., PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); Jimenez v. FBI, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

In this case, Exemption (b)(7)(E) was asserted by Customs and Border Protection to withhold certain material relating to law enforcement techniques. Exhibit 14 at ¶ 14.

## H. Exemption (b)(7)(F)

Exemption (b)(7)(F) of the FOIA protects law enforcement information that, if produced, "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). In this case, BOP asserted Exemption

(b)(7)(F) to withhold data compiled for law enforcement purposes

whose release could endanger the life or safety of someone.

Exhibit 12 at ¶¶ 12, 13, and 22.

                              CONCLUSION

     For the reasons set forth above, defendants motion for

summary judgment should be granted.

                         Respectfully submitted,

                         KENNETH L. WAINSTEIN, D.C. Bar #451058
                         United States Attorney

                         RUDOLPH CONTRERAS, D.C. Bar #434122
                         Assistant United States Attorney
                                    /s/
                         FRED E. HAYNES, DC Bar #165654
                         Assistant United States Attorney
                         555 4th Street, N.W.
                         Washington, D.C. 20530

                                  30

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
ROBERT A. MACKAY,              )
                              )
            Plaintiff,         )
                              )
        v.                     )   Civil Action No. 05-2363 JR
                              )
DRUG ENFORCEMENT               )
ADMINISTRATION, et al.,        )
                              )
            Defendants.        )
_____)
```

ORDER

UPON CONSIDERATION of the motion for summary judgment filed by the defendants and the responses thereto, it is this _____ day of _____, 2006,

ORDERED that defendants' motion for summary judgment is hereby granted; and it is further

ORDERED that this case is dismissed with prejudice from the docket of this Court. This is a final, appealable order.


UNITED STATES DISTRICT JUDGE

Copies to plaintiff and
counsel for defendants

31

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing

Motion For Summary Judgment to be served by first class mail,

postage prepaid, prior 1:00am on the 26th of August, 2006, on:

> Robert A. Mackay
> # 03473-063
> Federal Correctional Complex
> P.O. Box 3000
> Forrest City, Arkansas 72336

> /s/
> Fred E. Haynes, D.C. Bar # 165654
> Assistant United States Attorney
> 555 4th Street, N.W., Room E-4110
> Washington, D.C. 20530
> (202) 514-7201

32